UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| WILLIAM CODY SHANKLES, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 4:20-cv-01586-ACA |
| | } |
| SOCIAL SECURITY | } |
| ADMINISTRATION, | } |
| COMMISSIONER, | } |
| | |
| Defendant. | |

### MEMORANDUM OPINION

Plaintiff William Shankles appeals the decision of the Commissioner of Social Security terminating his disability benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

Mr. Shankles first applied for a period of disability in February 2013. (R. at 79). On February 15, 2015, an Administrative Law Judge ("ALJ") issued a favorable decision and found that Mr. Shankles had been disabled since his alleged onset date of January 11, 2013. (*Id*. at 73–79). This favorable decision from 2015 is the point

of comparison for purposes of determining whether medical improvement has occurred. 20 C.F.R. § 416.994(b)(1)(vii).

In July 2018, the Social Security Administration ("SSA") conducted a continuing disability review to determine whether Mr. Shankles had experienced medical improvement. (R. at 80–115). The SSA determined that Mr. Shankles' medical conditions had improved and therefore his disability had ceased. (*Id.*). Mr. Shankles requested reconsideration of the SSA's decision. (*Id.* at 132–33). In June 2019, the disability hearing officer affirmed the SSA's decision (*id.* at 142–52), at which point Mr. Shankles requested a hearing by an ALJ (*id.* at 157–59). After a hearing, the ALJ determined that Mr. Shankles' disability had, in fact, ceased on July 1, 2018. (R. at 34). Mr. Shankles then sought review by the Appeals Council, which denied his request. (*Id.* at 1–3). The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner, and the decision is ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm

the ALJ's decision if there is 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgement for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks and citation omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (internal quotations omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. THE ALJ'S DECISION

The ALJ presiding over the 2015 comparison point decision determined that Mr. Shankles had five severe medically determinable impairments: bipolar disorder, cannabis abuse disorder, a history of traumatic brain injury, a history of multiple leg fractures, and a history of left foot fracture with multiple foot surgeries and fusion with screw placements. (R. at 75). Based on these impairments, the ALJ determined

that Mr. Shankles had the residual functional capacity to perform light work "except that he can understand, remember, and carry out simple instructions but he can only occasionally respond appropriately to usual work situations and to changes in a routine work setting." (*Id*. at 76). The ALJ acknowledged that, if Mr. Shankles had the residual functional capacity to perform a full range of light work, a finding of "not disabled" would be required by the regulations. (*Id*. at 78). However, the ALJ determined that Mr. Shankles' inability to respond appropriately to usual work situations and deal with changes in a routine work setting precluded him from performing any work and justified a finding of disabled. (*Id*.).

In January 2020, a different ALJ determined that Mr. Shankles' disability had ended on July 1, 2018. (*Id*. at 34). The ALJ made that determination by following the required eight-step sequential evaluation:

> (1) whether the claimant is engaging in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether there has been medical improvement; (4) if so, whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement or if medical improvement is not related to the claimant's ability to work, whether an exception to medical improvement applies; (6) if there is medical improvement related to the claimant's ability to work or if an exception applies, whether the claimant has a severe impairment; (7) if so, whether the claimant can perform his past relevant work; and (8) if not, whether the claimant can perform other work.

20 C.F.R. § 404.1594(f)(1)–(8).

First, the ALJ found that Mr. Shankles had not engaged in substantial gainful activity since his alleged onset date. (R. at 19). Next, the ALJ determined Mr. Shankles still had the same severe medically determinable impairments as he had in 2015. (*Id*.). The ALJ concluded that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 19–23).

At step three, the ALJ determined Mr. Shankles had experienced medical improvement as of July 1, 2018 because the evidence indicated a "decrease in the medical severity of [his] impairments." (*Id*. at 23). At step four, the ALJ found that Mr. Shankles' improvement related to his ability to work because it resulted in an increase in his ability to concentrate, persist, and maintain pace at work and thus increased his residual functional capacity such that he no longer could respond appropriately to usual work situations and changes only on occasion. (*Id*. at 24). Specifically, the ALJ found that Mr. Shankles now had the residual functional capacity to perform light work except that he

> can occasionally climb ramps and stairs, crouch and crawl; he can frequently balance, stoop, and kneel; he should never climb ladders, ropes or scaffolds; he can occasionally push and pull with his bilateral lower extremities; he can have only occasional exposure to vibration; he should have no exposure to hazards such as unprotected heights and dangerous machinery; he would be able to understand, remember, and carry out simple instructions and tasks for 2 hour blocks of time; he can tolerate changes in the workplace that are infrequent and gradually introduced; he can have occasional work-related interaction with supervisors, co-workers and the general public.

(R. at 24)

Because the ALJ found that Mr. Shankles' medical improvement was related to his ability to work, she skipped step five and found at step six that Mr. Shankles continued to have a severe impairment or combination of impairments. (*Id.* at 31–32). At step seven, the ALJ found that Mr. Shankles could not perform his past relevant work. (*Id.* at 32–33). But at step eight, the ALJ found that Mr. Shankles could perform other work existing in the national economy, including as an assembler, inspector, and shipping and weighing clerk. (*Id.* at 33–34). Accordingly, the ALJ determined that Mr. Shankles' disability had ended as of July 1, 2018. (*Id.* at 34).

**IV. DISCUSSION**

Mr. Shankles challenges two of the ALJ's findings from the January 2020 decision as unsupported by substantial evidence. First, Mr. Shankles argues that the ALJ's findings of medical improvement at Step Three are not supported by substantial evidence. (Doc. 14 at 12). Second, Mr. Shankles argues the vocational expert's testimony at Step Eight does not constitute substantial evidence because it was based on an inaccurate and incomplete hypothetical. (*Id.* at 17). The court will address each argument in turn.

1. <u>Medical Improvement</u>

To terminate disability benefits, the Commissioner must determine a claimant has experienced a medical improvement such that he no longer suffers from a disability.  *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (per curiam); *see also* 20 C.F.R. § 404.1594(a).  A "medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).  Substantial evidence must support a finding of medical improvement "in the symptoms, signs, and/or laboratory findings associated with your impairment(s)."  *Freeman*, 739 F.2d at 566; *see also* 20 C.F.R. § 404.1594(b)(1).  This standard requires an ALJ to compare the claimant's medical evidence that formed the basis of the most recent favorable decision—called the comparison point decision ("CPD")—with the claimant's new medical evidence.  *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).  The Eleventh Circuit has emphasized that a cursory review of the claimant's previous medical evidence is insufficient—the ALJ must "actually compare the old and new evidence."  *Freeman*, 739 F.2d at 566.  If an ALJ fails to engage in the necessary comparison, the district court must reverse and remand the case for consideration using the proper standard.  *Id*.

Mr. Shankles argues that substantial evidence does not support the ALJ's finding of medical improvement.  (Doc. 14 at 12–17).  According to Mr. Shankles,

7

"[t]he ALJ never defined [his] current severe impairments," and accordingly "[i]t is impossible to compare [his] present condition with his past condition when [he] was awarded benefits." (*Id.* at 12). He claims that he suffered the same severe impairments at the time of the CPD as he suffered at the time of the unfavorable decision and that "[t]here is no explanation of any basis for improvement." (*Id.* at 7).

Contrary to Mr. Shankles' argument, the ALJ did in fact define Mr. Shankles' current severe impairments. (R. at 19). The ALJ found that Mr. Shankles suffered the same severe impairments on the date of the unfavorable decision as he did at the time of the CPD. (*Id.*). Those severe impairments included bipolar disorder, cannabis abuse disorder, history of traumatic brain injury, history of multiple leg fractures, and history of left foot fracture with multiple foot surgeries and fusion with screw placement. (*Id.* at 25). The ALJ did not base her decision on an improvement in the number of severe impairments Mr. Shankles suffered but on the degree of *severity* of those impairments. (*Id.* at 23). Specifically, the ALJ found that Mr. Shankles' mental health had improved from the time of his CPD (*see id.* at 78), such that he now had a better ability to maintain concentration, persistence, and pace (*id.* at 18). Accordingly, Mr. Shankles could now respond more appropriately to usual work settings. (R. at 18).

The ALJ based her determination on both Mr. Shankles' old and new medical evidence. She began with an in-depth review of the medical evidence that formed the basis of the CPD, including CED Mental Health records, Northside medical records, inpatient psychiatric records, and findings from a mental status examination performed by Dr. Jon Rogers. (*Id*. at 17–19). According to CED Mental Health records predating the CPD, Mr. Shankles experienced severe bipolar disorder with psychosis. (*Id*. at 17, 605, 623–24). In response to those symptoms, Mr. Shankles was prescribed psychotropic drugs, such as lithium carbonate and clonazepam. (*Id*. at 18, 540). The ALJ noted that Mr. Shankles' severe symptoms, which included "pressured speech, mood changes, agitation, decreased impulse control, and paranoia," led to inpatient psychiatric hospital stays on multiple occasions. (*Id*. at 18, 396–439, 493–503).

The ALJ also discussed Dr. Rogers' findings from his examination of Mr. Shankles. (R. at 18, 562–69). In 2014 Dr. Rogers diagnosed Mr. Shankles with bipolar disorder, anxiety disorder, and cannabis abuse and observed that Mr. Shankles could not perform the "serial 7's subtraction task" or spell the word "world" backwards. (*Id*. at 18, 567). According to Dr. Rogers, Mr. Shankles had a "*marked* limitation in responding appropriately to usual work situations and to changes in a routine work setting." (*Id*. at 18, 563) (emphasis added). The ALJ


noted that Mr. Shankles' inability to respond appropriately to normal work situations formed the basis for the previous finding of disabled. (*Id*. at 18–19, 78).

After evaluating the medical evidence that supported the CPD, the ALJ addressed whether Mr. Shankles' medical condition had since improved by evaluating Mr. Shankles' more recent medical evidence. (*Id*. at 23). As an initial observation, the ALJ noted that Mr. Shankles' "treatment is limited to substance abuse treatment since January 2019, with no prior treatment other than a visit in 2016." (*Id*.). The medical evidence post-dating the CPD that was available included records from Mr. Shankles' primary care visits, CED mental status examinations, and a psychological consultation with Dr. Mary Arnolds. (R. at 23). According to the ALJ, those records showed an improvement in the severity of Mr. Shankles' mental health symptoms. (*Id*.).

The ALJ stated that Dr. Arnold's 2018 report indicated that Mr. Shankles "had stable mood, normal affect, thought process without tangential or circumstantial content, compliant demeanor, conventional behavior, spontaneous speech, normal orientation, and intact cognitive functioning." (*Id*. at 23, 291–94). Dr. Arnold also noted that Mr. Shankles could now calculate simple math problems and perform the serial 7's subtraction task. (*Id*. at 23, 292). The ALJ also reviewed Mr. Shankles' primary care records from February 2018 through December 2018. (*Id*. at 23, 297–311). She pointed out that those records indicated some complaints

of anxiety and racing thoughts but contained no "abnormal psychiatric findings." (R. at 23). The ALJ evaluated progress reports from CED Mental Health Center which state Mr. Shankles had occasional lack of focus, but had intact memory, a fair attention span, and appropriate vocal tone. (*Id*. at 23, 314, 319). The ALJ noted that some of Mr. Shankles' records from CED Mental Health Center indicated an irritable mood but pointed out that "subsequent examination findings show that he had a euthymic mood." (*Id*. at 23, 366)

In addition to the above medical records, the ALJ also evaluated Mr. Shankles' own statements as to his abilities. (*Id*. at 23–24). In his function report, Mr. Shankles reported that he could manage his own personal care, prepare simple meals, perform simple cleaning tasks, drive a car, watch television, and spend time with his family and friends. (*Id*. at 23–24, 242–49). Mr. Shankles also reported that he could get along with others. (*Id*.). In his psychological consultation with Dr. Arnold, Mr. Shankles reported that he could engage in "daily activities such as straightening up the house, driving the pick up to put out hay for his three horses, cut[ting] 500 bales of hay . . . watching television, attending church, and visiting his girlfriend's parents." (R. at 24, 293).

Based on both Mr. Shankles' prior medical evidence and new medical evidence, the ALJ concluded Mr. Shankles no longer had a marked limitation in his ability to concentrate, persist, or maintain pace, nor could he "only occasionally

respond appropriately to usual work situations and to changes in a routine work setting." (*Id.*). His symptoms had improved such that now he had only a moderate limitation in his ability to concentrate, persist, or maintain pace. (*Id.*). The ALJ found that Mr. Shankles' improvement related to his ability to work because "[t]he residual functional capacity [Mr. Shankles] had since July 1, 2018 is less restrictive than the one [he] had at the time of the CPD." (*Id*. at 31). With a less restrictive RFC, Mr. Shankles could now perform jobs available in the national economy. (*Id*. at 33).

In her analysis, the ALJ compared Mr. Shankles' old and new medical evidence before upholding the Commissioner's decision to terminate his benefits. *See Freeman*, 739 F.2d at 566. As outlined above, that determination is supported by substantial evidence. Therefore, the court will not disturb the ALJ's findings of medical improvement.

2. Vocational Expert Testimony

To help determine whether a claimant can perform past or other work, an ALJ may obtain testimony from a vocational expert. *See* 20 C.F.R. §§ 404.1566(e). "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). A hypothetical that does not explicitly include all a claimant's impairments must "otherwise

implicitly account for the limitation." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011). The Eleventh Circuit has repeatedly held in unpublished opinions issued after *Winschel*, that a hypothetical which limits a claimant to unskilled or simple work implicitly accounts for moderate limitations in the claimant's ability to concentrate, persist, or maintain pace. *See e.g.*, *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014); *Carpenter v. Comm'r of Soc. Sec.*, F. App'x 482, 490 (11th Cir. 2015).

> At Mr. Shankles' hearing, the ALJ asked the vocational expert to
>
> assume a hypothetical individual the same age, education and work experience as [Mr. Shankles] who can work at the light exertional level with the following limitations. . . . Able to understand, remember and carry out simple instructions and tasks for two-hour blocks of time. Can tolerate changes in the workplace that are infrequent and gradually introduced. Could have occasional work-related interaction with coworkers, supervisors, and the public.

(R. at 64–65).

Based on this hypothetical, the vocational expert testified that Mr. Shankles could perform jobs that exist in the national economy, including as an assembler, inspector, hand packager, and shipping clerk. (*Id*. at 65). Mr. Shankles argues that the ALJ's hypothetical is improper because it "did not consider [Mr. Shankles'] bipolar disorder with severe symptoms such as anxiety, racing thoughts, and mood swings." (Doc. 14 at 18). The Commissioner relies on *Winschel* and argues the ALJ's

hypothetical implicitly accounted for Mr. Shankles' bipolar disorder and accompanying symptoms. (Doc. 18 at 12–15).

The court agrees with the Commissioner's position. Here, the ALJ's hypothetical properly accounted for Mr. Shankles' severe impairments. In formulating Mr. Shankles' RFC, the ALJ found that Mr. Shankles' symptoms caused a moderate limitation in his ability to concentrate, persist, or maintain pace. (R. at 24–28). The ALJ then concluded that Mr. Shankles could nonetheless perform light exertion work with "simple instructions" and infrequent workplace changes. (*Id*. at 28). Contrary to Mr. Shankles' argument, the ALJ did account for these limitations in her hypothetical question to the vocational expert by specifying that the hypothetical individual was "[a]ble to understand, remember and carry out simple instructions and tasks for two-hour blocks of time" and "[c]an tolerate changes in the workplace that are infrequent and gradually introduced." (*Id*. at 65). The ALJ's hypothetical question thus included Mr. Shankles' limitations as supported by the medical evidence.

## V. CONCLUSION

For the reasons given above, the court concludes that the Commissioner's decision is supported by substantial evidence and the Commissioner applied proper legal standards in reaching the decision. As such, the court **WILL AFFIRM** the

Commissioner's final decision.  The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this December 21, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE